Case 2:17-cv-00085 Document 7 Filed on 03/28/17 in TXSD Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
March 28, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RICHARD LAMAR GRANVILLE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:17-CV-85 |
| | § | |
| UNIVERSITY OF TEXAS MEDICAL BRANCH, *et al*, | § § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION TO DISMISS CASE

Plaintiff Richard Lamar Granville is a Texas inmate appearing *pro se* and *in forma pauperis*. He filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983 complaining of deliberate indifference to his serious medical needs and retaliation while a prisoner at the Texas Department of Criminal Justice (TDCJ) McConnell Unit. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

The undersigned recommends Plaintiff's complaint be **DISMISSED** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for the reasons set forth below. It is further recommended that the dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

### I. JURISDICTION

---

[1] Plaintiff is **WARNED** that if he accumulates three strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury. *See* § 1915(g).

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II. PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

### A. Procedural Background

Plaintiff is a prisoner in the TDCJ Criminal Institutions Division and he is currently housed at the McConnell Unit in Beeville, Texas. He filed his original complaint on February 27, 2017, alleging officials at the McConnell Unit have been deliberately indifferent to his serious medical needs and/or retaliated against him by assessing a fee for his medical care. Plaintiff named as defendants: (1) University of Texas Medical Branch ("UTMB") Director, (2) nurse Blackwell, R.N. supervisor; (3) nurse Felicia Ana Antu, L.V.N. and (4) Practice Manager Kendra Long. Plaintiff is seeking "nominal, punitive [and] compensatory damages." (D.E. 1, p. 4).

A *Spears*[2] hearing was held on March 22, 2017 where Plaintiff was given an opportunity to explain his claims. The following allegations were made in Plaintiff's original complaint (D.E. 1), or at the hearing.

### B. Plaintiff's Claims

Plaintiff is a 54 year old man serving a 35 year sentence for a 2013 controlled substance conviction. He has been an inmate at the McConnell Unit since November

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

2013.  He describes himself as being an inmate who receives chronic medical care for his hepatitis C, diabetes, high blood pressure, problems with blood clotting, bone spurs and carpal tunnel syndrome.  On January 9, 2016 Plaintiff was scheduled to be seen at the McConnell Unit medical department for treatment of his diabetes. While waiting at the medical department he became extremely dizzy.  Plaintiff alleges in his written complaint he collapsed and that he was subsequently denied treatment.  However, during the *Spears* hearing Plaintiff testified nurse Antu took Plaintiff's blood pressure and determined he was dehydrated.

Plaintiff later learned nurse Antu submitted Plaintiff's medical visit to TDCJ authorities who assessed Plaintiff with a $100.00 co-pay against his inmate account.[3] Plaintiff believes the $100.00 charge was unjustified because as a chronic care patient he should not have been charged under TDCJ policy.[4]

Plaintiff filed a TDCJ grievance regarding his treatment and being assessed a co-pay and later filed a complaint with the Texas Medical Board against nurse Antu. Plaintiff alleges nurse Antu refused to attend to Plaintiff after he filed the TDCJ grievance and complaint with the medical board.  Plaintiff alleges in his written complaint he was denied treatment for weeks.  (D.E. 1, p. 4).  However, during the *Spears* hearing Plaintiff testified other nurse practitioners and medical providers see Plaintiff in person at the McConnell Unit and he is occasionally seen by a medical

---

[3] Texas inmates are charged an annual $100.00 co-pay for routine health care services.  *See* Tex. Gov. Code. Art. 501.063.  An inmate will not be denied medical care based on an inmates failure or inability to pay the fee.  *Id.*
[4] A TDCJ document entitled "Notice To Offenders, $100 Health Care Fee" advises inmates of the co-pay and indicates inmates will not be charged for emergency care, chronic care, health screening and other services necessary to comply with State law and regulations. The notice is cited and repeated in relevant part in *Morris v. Livingston*, 739 F.3d 740, 743, n.2 (5th Cir. 2014) and is also available at www.tdcj.state.tx.

provider at another location through video-teleconferencing. Plaintiff was most recently seen in person by a TDCJ medical provider in February 2017. During this visit, Plaintiff's medications were modified in an attempt to deal with his dizzy spells. Plaintiff alleges he still suffers from dizzy spells.

Plaintiff alleges the UTMB Director, nurse Blackwell, and practice manager Kendra Long are liable as supervisors for failing to ensure Plaintiff received adequate medical care and failing to adequately supervise their subordinates. While Kendra Long responded to Plaintiff's TDCJ step one grievance about nurse Antu, none of these defendants is alleged to have had any personal involvement with Plaintiff's medical treatment or care. Plaintiff alleges nurse Antu was personally involved in his medical care. He alleges she did not adequately treat him for his dizziness on January 9, 2016 and that she has refused to treat him since Plaintiff filed a grievance and complaint against her. Plaintiff further alleges nurse Antu retaliated against him by submitting his medical visit on January 9, 2016 for collection of the co-pay.

### III.   LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune

4 / 14

defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id*.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

IV.    **DISCUSSION**

   A.    **Eleventh Amendment Immunity**

Plaintiff does not specifically allege whether he brings these claims against Defendants in their individual or official capacities. However, to the extent Plaintiff is raising a claim against the defendants in their official capacities, those claims are addressed herein. A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ-CID officers and officials acting in

their official capacities. *See Oliver v. Scott,* 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent Plaintiff is suing Defendants in their official capacities for monetary damages, those claims are barred by the Eleventh Amendment. Thus, it is respectfully recommended that Plaintiff's claims for money damages against Defendants in their official capacities be dismissed as barred by the Eleventh Amendment.

### B.  Supervisory Liability

Plaintiff alleges the UTMB Director, nurse Blackwell, and practice manager Kendra Long are liable as supervisors for failing to ensure Plaintiff received adequate medical care and for failing to adequately supervise their subordinates. None of these defendants was personally involved in Plaintiff's treatment or the alleged deliberate indifference to his medical needs. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). For a supervisor to be liable under § 1983, the plaintiff must show that (1) the supervisor failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the constitutional violation; and (3) the failure to train or supervise amounts to deliberate indifference to the plaintiff's constitutional rights. *Roberts v. City of Shreveport,* 397 F.3d

287, 292 (5th Cir. 2005). Establishing a supervisor's deliberate indifference generally requires a plaintiff to demonstrate "at least a pattern of similar violations." *Rios v. City of Del Rio, Tex.,* 444 F.3d 417, 427 (5th Cir. 2006) (citations omitted). Plaintiff has failed to allege a cognizable claim against the UTMB Director, nurse Blackwell, or Kendra Long as supervisors. It is, therefore, recommended Plaintiff's claims against these defendants be dismissed with prejudice.

Additionally, as set forth below, Plaintiff has failed to allege facts that any official at the McConnell Unit has been deliberately indifferent to his serious medical needs.

### C. Deliberate Indifference to Serious Medical Needs

The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (internal quotation omitted). A prison official violates this duty when by act or omission he is deliberately indifferent to prison conditions which pose a substantial risk of serious harm. *Id.* at 834.

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege the official(s) acted with deliberate indifference to serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 105 (1976); *Wilson v. Seiter,* 501 U.S. 294, 303 (1991); *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1991). Deliberate indifference encompasses more than mere negligence on the part of prison officials. It requires that prison officials be both aware of specific facts from which the inference could be drawn

that a serious medical need exists and then the prison official, perceiving the risk, must deliberately fail to act. *Farmer*, 511 U.S. at 837. Furthermore, negligent medical care does not constitute a valid § 1983 claim. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); s*ee also Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993) ("[i]t is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim."). As long as medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982).

Defendant nurse Antu treated Plaintiff on January 9, 2016. She assessed Plaintiff's vital signs and determined Plaintiff was suffering from dehydration. While Plaintiff disputes the diagnosis, Plaintiff complains of a single instance of treatment by nurse Antu and he has not alleged any injury or harm resulting from this treatment or lack of treatment. Plaintiff complains nurse Antu refused to treat Plaintiff after he filed a grievance and complaint against her to the medical board. Accepting as true for purposes of this recommendation that nurse Antu refused to treat Plaintiff after he filed grievances, Plaintiff has not been denied medical care or treatment while at the McConnell Unit. Plaintiff testified he has been treated by other medical providers at the McConnell Unit including physicians who assessed Plaintiff by video-teleconferencing. Additionally, Plaintiff was seen in person by a medical provider most recently in February 2017 regarding his dizzy spells. The provider made adjustments to Plaintiff's medication to address his dizzy spells. Plaintiff's dizzy spells persist, however, other medical providers at the McConnell Unit are treating Plaintiff for this condition.

The allegations by Plaintiff indicate he is being seen by medical personnel at the McConnell Unit and those persons are exercising their professional medical judgment to treat his conditions. Plaintiff is not being neglected and he has failed to state a claim prison officials are deliberately indifferent to his serious medical needs. Therefore, it is recommended Plaintiff's claims for deliberate indifference to his serious medical needs be dismissed with prejudice.

D. Retaliation -- $100 Co-pay

During the *Spears* hearing it was apparent Plaintiff feels particularly aggrieved by being charged a $100.00 co-pay for his medical treatment on January 9, 2016. Plaintiff alleges Defendant nurse Antu retaliated against him by charging him a $100.00 fee for this medical treatment. Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. See *Perry v. Sinderman*, 408 U.S. 593, 597 (1972). Retaliation is actionable only if the retaliatory act "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008). It is well-settled that a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). However, the Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 Fed. Appx. 386, 387 (5th Cir. 2010) (unpublished)(citing *Wood*, 60 F.3d at 1166). In addition, the Fifth Circuit has concluded that some acts, even

though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id*. For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. *Id.* at 687.

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger,* 188 F.3d 322, 324-25 (5th Cir. 1999) (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998). An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted).

Plaintiff has a right to adequate medical care. However, the allegation the assessment of a fee for medical services was retaliatory is conclusory. The co-pay is required by statute. *See* Tex. Gov. Code. Art. 501.063. The Fifth Circuit has upheld the constitutionality of this statute. *Morris v. Livingston*, 739 F.3d 740, 745-52 (5th Cir. 2014). In *Morris*, the Fifth Circuit found the inmate challenging Article 501.063 had failed to "allege facts that exhibit deliberate indifference." *Id.* at 748. "'[T]he deliberate indifference standard . . . does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society.'" *Id.* (quoting *Reynolds v. Wagner*, 128 F.3d 166, 173 (3rd Cir.

1997)). Also, courts have recognized that inmates do not have a constitutional right to free health care. *Morris* 739 F.3d at 747 (citations omitted). Additionally, the Fifth Circuit found Article 501.063 did not raise a Fourteenth Amendment due process claim under § 1983. Id. at 749-50. The court found the TDCJ notice was constitutionally adequate. *Id.*

Plaintiff's disagreement with being assessed a $100.00 co-pay is understandable, however, it does not rise to the level of a cognizable constitutional violation. Taking as true Plaintiff's allegations, he fails to state a claim of retaliation against nurse Antu. It is, therefore, respectfully recommended Plaintiff's claim for retaliation be dismissed with prejudice.

## V.    CONCLUSION

Plaintiff has failed to state cognizable constitutional claims against the named Defendants herein. Therefore, it is respectfully recommended that Plaintiff's complaint be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

The undersigned further recommends Plaintiff not be given leave to amend as the undersigned considered his testimony for purposes of this memorandum and recommendation.[5] It is further recommended that this dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g), and that the Clerk of Court be instructed to send notice

---

[5] The purpose of a *Spears* hearing is to determine whether an inmate plaintiff should be permitted to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(d). *Spears,* 766 F.2d at 181–82. The evidentiary hearing is "in the nature of a motion for more definite statement." *Id.*

of this dismissal to the United States District Clerk for the Southern District of Texas, Houston Division, Attn: Beverly Goolsby, 515 Rusk St., Houston, Texas, 77002.[6]

Respectfully submitted this 28th day of March, 2017.

                                                         Jason B. Libby
                                        United States Magistrate Judge

---

[6] The three strikes list is no longer maintained by Betty Parker in the Eastern District of Texas.

**NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).